UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
MIGUEL A. JIMENEZ,

                     Plaintiff,             **MEMORANDUM &**
                                                             **ORDER**
                                                             CV 16-5846 (GRB)(LGD)

   -against-

TROOPER JOSE VARGAS, SERGEANT RANDY
SMITH, and TROOPER EDWARDO ARIAS,

                    Defendants.
-------------------------------------------------------------------X

**GARY R. BROWN, United States District Judge:**

      In this case, pending since 2016, plaintiff Miguel Jimenez asserts various claims stemming from a 2013 traffic stop at which plaintiff was arrested, detained, and allegedly assaulted by defendants Jose Vargas, Edwardo Arias, and Randy Smith. After a lengthy period of pretrial filings and motions—including multiple amended complaints, three premotion conferences, and a written decision by Judge Azrack in 2018—defendants filed a motion for summary judgment on August 1, 2024. Docket Entry ("DE") 113. For the reasons that follow, that motion is granted in part and denied in part.

    *Background*

    *Plaintiff's Arrest and Prosecution*

      On October 20, 2013, plaintiff, driving westward on Jericho Turnpike, accidentally rear-ended another vehicle; the other car drove off with plaintiff in pursuit before engine trouble forced him to pull onto the median. Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response") ¶¶ 7-17. After plaintiff was parked for several minutes, defendant Vargas arrived and instructed plaintiff to leave his car. *Id.* ¶¶ 18-19. The narratives diverge at this point: plaintiff asserts Vargas forcefully dragged him from the car, whereas Vargas claims

plaintiff began threatening him while exhibiting signs of alcohol intoxication. *Id.* ¶¶ 20-21. Both sides agree that the encounter concluded with Vargas tasing plaintiff and placing him under arrest. *Id.* ¶¶ 22-23. Defendant Vargas asserts that he then examined plaintiff's car, where he noticed an "odor of marijuana" and discovered a "marijuana pipe." *Id.* ¶¶ 24-25.

Defendant Vargas took plaintiff to the Valley Stream barracks, where plaintiff alleges he was beaten by Vargas and two other officers, defendants Smith and Arias. Plaintiff's Counterstatement of Material Facts ("Plaintiff's Counterstatement") ¶¶ 24-29. Defendant Vargas asserts he administered a horizontal gaze nystagmus test on plaintiff, which provided indicia of intoxication, but plaintiff denies that this occurred. Plaintiff's Response ¶¶ 29-37. After the officers left the room, plaintiff escaped his handcuffs and fled from the barracks. *Id.* ¶¶ 41-42. Defendants discovered plaintiff in the parking lot and re-apprehended him; plaintiff alleges the officers again used physical force against him during this second arrest, including tasing him twice and kicking his head. Plaintiff's Counterstatement ¶¶ 33-45.

Defendants charged plaintiff with driving while intoxicated, unlawful possession of marijuana, resisting arrest, and leaving the scene of property damage in connection with the initial arrest, and obstruction of governmental administration in the second degree and escape in the third degree stemming from his attempted flight and re-arrest. Plaintiff's Response ¶¶ 44-49. Three of the six charges were dismissed for procedural reasons prior to trial, and plaintiff was ultimately acquitted of the remaining counts on June 22, 2016. *Id.* ¶¶ 53-56.

*Procedural History*

On October 19, 2016, Plaintiff commenced this suit, initially assigned to Judge Azrack. Following a premotion conference, plaintiff filed his First Amended Complaint ("FAC"), which asserted five "counts": malicious prosecution, abuse of process, and violations of 42 U.S.C. §§

2

1981, 1983 and 1985.  *See generally* DE 20.  Defendants moved to dismiss the complaint in full. DE 28.  In an order dated March 20, 2018, Judge Azrack dismissed plaintiff's claims under state law, under § 1981 and § 1985, "for malicious prosecution, abuse of process, fabrication of evidence and failure to intervene against all defendants," and against various defendants that are no longer involved in this case.  DE 32 at 2.  Judge Azrack generally denied leave to amend but granted plaintiff "one more opportunity to replead his claims for malicious prosecution, abuse of process, fabrication of evidence, and failure to intervene" to address the "serious defect in [the FAC's] use of group pleading." *Id.* at 2, 4.  The motion to dismiss was denied in all other respects.  *Id.* at 5.

Plaintiff filed a Second Amended Complaint ("SAC") on April 21, 2018.  DE 34. Although plaintiff removed his claims against parties that had been dismissed from the case, the SAC was otherwise nearly identical the FAC, reasserting claims that had been dismissed with prejudice[1] and again relying on group pleading to support plaintiff's § 1983 claims.  *See generally id.*  Yet, defendants did not file another motion to dismiss, so the SAC became the operative complaint in this case.

Following discovery, during which the case was reassigned to the undersigned, the Court held a premotion conference regarding defendants' anticipated motion for summary judgment. *See* Minute Entry dated April 13, 2023.  At that conference, the Court concluded that plaintiff's failure to intervene claim rested on factual disputes that must be resolved by a jury and denied summary judgment on that claim.  DE 98 at 33-35.  Before addressing the remaining claims, the Court instructed counsel for both sides to submit letters to clarify certain evidentiary matters,

---

[1] Plaintiff now concedes that these claims (under state law, § 1981, and § 1985) are no longer part of the case.  *See* DE 110 at 3.

3

including identifying the evidence plaintiff would offer to support his fabrication of evidence and abuse of process claims. *Id.* at 18, 22-23. However, due to "a dispute as to the claims that are remaining and the parties' obligations following [the Court's] ruling," neither side submitted the requested material. DE 93 at 1. Defendants requested another premotion conference to resolve the remaining claims, after which the Court directed the parties to fully brief the motion. *See* Minute Entry dated March 20, 2024. Defendants filed their motion, DE 113, and accompanying memorandum, DE 113-1, on August 1, 2024. Plaintiff filed a memorandum in opposition, DE 114, and defendants filed a reply in further support. DE 115. This opinion follows.

*Discussion*

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Claims asserted in the Second Amended Complaint*

Although this case will soon be pending for a decade, with an operative complaint over six years old, the parties still dispute what causes of action are asserted in the SAC. Plaintiff contends that there are six remaining claims, all under 42 U.S.C. § 1983: malicious prosecution, abuse of process, fabrication of evidence, failure to intervene, excessive force, and false arrest. *See* DE 110 at 3. Defendants agree with plaintiff as to the first four claims but argue that the SAC does not assert claims for excessive force or false arrest. *See* DE 113-1 at 8. This confusion appears to stem from the structure of the SAC and a misunderstanding of Judge Azrack's prior order, which must be addressed before this case can proceed.

4

The SAC does not discretely list the claims plaintiff asserts under § 1983; instead, it contains a general cause of action labeled "First Count: 42 U.S.C. § 1983," followed by several paragraphs haphazardly describing the harms allegedly suffered by plaintiff and the purportedly resultant constitutional violations. *See, e.g.*, DE 34 ¶ 79 (referencing "[t]he wrongful stop, false detainment, assault, wrongful arrest, malicious prosecution, and other wrongful acts conducted against the plaintiff"); ¶ 82 (describing "[t]he excessive force, false arrest [and] malicious prosecuting of Plaintiff…without probable cause"). Whatever objections defendants may have now, this language was sufficient to put them on notice that plaintiff was asserting claims for excessive force and false arrest—a fact confirmed by their 2017 motion to dismiss, which contained specific sections addressing those claims.[2] DE 28-1 at 10-14.

Defendants then argue that, even if the SAC attempts to assert claims for excessive force and false arrest, this would violate Judge Azrack's March 2018 order addressing the FAC, which denied "leave to amend the complaint with respect to any of the other claims or any of the other defendants." DE 32 at 4. Defendants attempt to construe this language as dismissing all claims in the FAC, even though the order explicitly states that "Defendants' motion to dismiss is GRANTED in part and DENIED in part." *Id.* at 1. Contrary to defendants' assertion, Judge Azrack necessarily found that the excessive force and false arrest claims, which all parties acknowledged were present in the FAC, were plausible and thus outside the scope of her order denying leave to amend.

In short, plaintiff has asserted claims for excessive force and false arrest since the inception of this case. Those claims have never been dismissed or abandoned and remain

---

[2] That motion to dismiss was filed in response to the First Amended Complaint, whose language was replicated almost verbatim in the SAC (including both excerpts cited above). Therefore, defendants were clearly on notice that these claims were still being asserted in the SAC.

5

operative today.  The Court will therefore consider these two claims—along with plaintiff's claims for fabrication of evidence, abuse of process, and malicious prosecution—in deciding the instant motion.[3]

*False Arrest*

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007).  When the challenged arrest is made by a police officer, the viability of the claim turns on the whether the officer had probable cause to arrest the plaintiff.  *See Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006).  Probable cause exists when a law enforcement officer has "knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *United States v. Diaz*, 854 F.3d 197, 203 (2d Cir. 2017).  "[I]t is not relevant whether probable cause existed with respect to each individual charge" as long as probable cause existed for some charge.  *Jaegly*, 439 F.3d at 154.  Even if there was not probable cause to arrest, law enforcement officers are entitled to qualified immunity if they can establish "arguable probable cause," which "exists if either (a) it was objectively reasonable for the officer to believe

---

[3] The Court has some doubts about the sincerity of defendants' counsel's purported belief that the false arrest and malicious prosecution claims were dismissed by Judge Azrack—particularly since counsel blatantly misrepresents the contents of plaintiff's deposition testimony, as discussed below.  However, it is worth noting that this issue could have been avoided if plaintiff's counsel had complied with Judge Azrack's instruction that, in drafting the SAC, plaintiff should avoid "inappropriate group pleading" and "make clear whether he is bringing a particular claim under federal or state law." DE 32 at 4.  Instead, the SAC largely repeats the language of the FAC, including by reasserting claims that had been dismissed with prejudice.  Plaintiff's counsel now requests that the Court perform "a liberal reading of the [SAC]"—a procedure normally reserved for *pro se* litigants—in an apparent admission of the inadequacy of the pleadings.  *See* DE 114 at 4.  These deficiencies in the SAC have caused additional delays in this aging case, primarily to plaintiff's detriment.

that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotations omitted). "Summary judgment dismissing a plaintiff's false arrest claim is appropriate if the undisputed facts indicate that the arresting officer's probable cause determination was objectively reasonable [but inappropriate] if the officer's reasonableness depends on material issues of fact." *Jenkins*, 478 F.3d at 88 (finding that qualified immunity did not apply when the police officer defendants' narrative of the arrest differed from the plaintiff's, and neither account could be corroborated by other evidence).

      Here, the Court cannot conclude as a matter of law that defendant Vargas had probable cause for plaintiff's initial arrest. The parties present wildly differing accounts of the encounter, and according to plaintiff's testimony, there would be no justification for the arrest.[4] Specifically, plaintiff asserts that he was not intoxicated, that he was not administered any sobriety test, that no "marijuana pipe" was found in his car, and that he did not resist arrest.[5] As

---

[4] In an apparent attempt to obscure the details of plaintiff's account, defendants cite to various portions of plaintiff's deposition transcript that they assert contain "concessions" by plaintiff as to what happened during his arrest. Most of the citations state the opposite of defendants' claims. For example, defendants cite the following exchange for the proposition that "Plaintiff conceded that Defendant Vargas found a marijuana pipe in Plaintiff's car":

    Q:   Do you recall any marijuana being found in your vehicle?
    A:   No.
    …
    Q:   And [Vargas] said he found that pipe in your vehicle?
    A:   That is what he claimed.

*See* DE 113-1 at 15, citing DE 113-7 at 157. These citations can only be described as flagrantly and obviously false, and defendants' counsel is warned that future attempts to misrepresent the evidence will result in immediate sanctions.

[5] In addition, defendant Vargas's observation of plaintiff's damaged car parked on the median, standing alone, is insufficient to establish probable cause that plaintiff left the scene of property damage in violation of N.Y. Veh. & Traf. Law § 600.1. Although defendant Vargas asserts that he received a bystander report stating that plaintiff had driven off following an accident—which

7

in *Jenkins*, there is no conclusive evidence to establish either version of events, and if plaintiff's version is believed, defendant Vargas would not be entitled to qualified immunity, as no reasonable officer would believe he had probable cause under those facts. Therefore, it must fall to a jury to determine if defendant Vargas had probable cause to arrest plaintiff during their initial encounter. As defendant Vargas was the only officer present at that time, summary judgment is granted as to the other defendants for the first arrest.

However, it cannot be reasonably disputed that defendants had probable cause to re-arrest plaintiff for escape and obstruction of governmental administration, as plaintiff himself admits that fled the barracks while defendants were out of the room. Plaintiff's contention that his initial arrest was wrongful—and that he was therefore not in "lawful custody" at the time of his attempted escape—could be a trial defense to an escape charge, *see People v. Allah*, 111 Misc. 2d 516, 519–20 (N.Y. Sup. Ct. 1981), but that does not render the arrest itself a violation of the Fourth Amendment. *See United States v. Bellamy*, 592 F. Supp. 2d 308, 322 (E.D.N.Y. 2009) (holding that the fruit of the poisonous tree doctrine did not bar admission of evidence found on a defendant's person following an attempted escape, even though the initial arrest was legally deficient); *see also United States v. Bailey*, 691 F.2d 1009, 1012–19 (11th Cir. 1982) (same). Furthermore, defendants would clearly be entitled to qualified immunity based on arguable probable cause given that they directly observed plaintiff fleeing the barracks and had to make a split-second decision to pursue him. *See, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 775 (2014) (reiterating that qualified immunity determinations must "allow for the fact that police officers

---

would create probable cause to believe that plaintiff violated § 600.1—that allegation is contested by plaintiff and uncorroborated by extrinsic evidence. Accordingly, the question of whether defendant Vargas received such a report depends on credibility determinations that must be ascertained by the factfinder at trial.

8

are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving") (internal quotations omitted).

For these reasons, defendant Vargas's summary judgment motion on the false arrest claim is denied as to the initial encounter and granted as to the re-arrest following plaintiff's attempted escape. The other defendants' motion as to the false arrest claim is granted in its entirety.

*Excessive Force*

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). However, "the Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's reasonableness standard," *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015), as judged according to "the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. "Even where an officer is found to have used excessive force…the doctrine of qualified immunity will shield that officer from liability for damages if his conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Outlaw v. City of Hartford*, 884 F.3d 351, 366 (2d Cir. 2018) (internal quotations omitted). But "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to

9

[summary judgment based] on a defense of qualified immunity." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotations omitted).

      Here, as with the false arrest claim, significant factual disputes preclude summary judgment on the excessive force claim as to the initial arrest. While defendant Vargas alleges actions by plaintiff that would justify some degree of responsive force, plaintiff presents an entirely different view of what transpired: namely, that defendant Vargas initiated the encounter by pulling plaintiff from his car and throwing him to the ground, hit him in the head while yelling profanely, and tased plaintiff before placing him under arrest, all without any provocation on plaintiff's part. DE 113-7 at 53. If plaintiff's version of events is credited, the *Graham* factors would clearly indicate that none of these uses of force were warranted. First, the severity of the crime at issue is quite low, as plaintiff's presence in a damaged car parked on the median would at most give defendant Vargas cause to suspect that plaintiff had committed a minor traffic infraction. Second, plaintiff posed no danger to officer or public safety while unarmed and seated in a stationary vehicle. Third, even if plaintiff presented any risk of flight, that risk necessarily ended after plaintiff was pulled from his car and thrown to the ground. Finally, plaintiff flatly denies resisting arrest, suggesting that even if defendant Vargas had probable cause to arrest plaintiff, only minimal contact was necessary to take him into custody. If a jury finds the facts as alleged by plaintiff, then defendant Vargas would not be entitled to qualified immunity as to excessive force, as no reasonable officer could believe that he was justified in using a taser, punches, or a forceful throw to the ground against an arrestee who has not engaged in any violent or threatening behavior. *See, e.g.*, *Jones v. Treubig*, 963 F.3d 214, 227 (2d Cir. 2020) ("[W]e have held, as it relates to tasers, that it was clearly established…that officers may not use a taser against a compliant or non-threatening suspects") (internal quotations omitted);

10

*Outlaw*, 884 F.3d at 367 ("no competent police officer could have failed to comprehend that that [the prohibition on the use of excessive force] would encompass repeatedly beating an unresisting, supine, jaywalking suspect"). Therefore, summary judgment is denied as to defendant Vargas as to the initial arrest. Summary judgment is granted as to the other two defendants, who were not present at that encounter.

Although plaintiff's re-arrest presents additional issues, the Court concludes that a jury could find that the force used by the collective defendants during that encounter was excessive. The undisputed facts confirm that defendants had probable cause to arrest plaintiff for his attempted escape and were, at a minimum, entitled to use the ordinary degree of force needed to effectuate any arrest (e.g., placing handcuffs on plaintiff, gripping plaintiff's arm while escorting him inside). However, plaintiff testified at his deposition that, upon hearing the police officers approaching him from behind, "I just gave myself up [and] threw myself on the floor on my chest." DE 113-7 at 81. If a jury credits plaintiff's testimony that he was not resisting, then it could also find that the force allegedly used against plaintiff, which included kicks to the head and additional uses of the taser, was excessive. *See Jones*, 963 F.3d at 225 ("it is a Fourth Amendment violation for a police officer to use significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others"). Accordingly, defendants' motion is denied as to plaintiff's excessive force claim as to the re-arrest.

*Malicious Prosecution*

"The elements of a malicious prosecution claim under section 1983 are derived from applicable state law." *Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013). The Second Circuit has "stated these elements, under New York law, to be (1) commencement of a criminal proceeding, (2) favorable termination of the proceeding, (3) lack of probable cause, and (4)

11

institution of the proceedings with actual malice." *Id.* at 111–12.  To establish a favorable termination, "[a] plaintiff need only show that the criminal prosecution ended without a conviction." *Thompson v. Clark*, 596 U.S. 36, 49 (2022).  Unlike for a false arrest claim, probable cause in the malicious prosecution context means "probable cause to believe that [the prosecution] could succeed," *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003), "measured as of the time the judicial proceeding is commenced." *Caraballo v. City of New York*, 726 F. Supp. 3d 140, 160 (E.D.N.Y. 2024) (internal quotations omitted).  Therefore, "information discovered…after the arrest, but before the commencement of proceedings" must be included in the probable cause analysis, *Mejia v. City of New York*, 119 F. Supp. 2d 232, 254 (E.D.N.Y. 2000), and "[t]he failure to make a further inquiry when a reasonable person would have done so may be evidence of lack of probable cause." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) (internal quotations omitted).  Finally, the "lack of probable cause generally creates an inference of [actual] malice," so that element also turns on the existence of probable cause.  *Boyd*, 336 F.3d at 76.

Here, defendants do not contest that they, as the officers present during plaintiff's arrest and detention at the barracks, were responsible for commencing criminal proceedings against plaintiff, resulting in the six counts with which he was ultimately charged.  DE 113-1 at 16-20.  Three of these counts were dismissed for procedural reasons, and plaintiff was acquitted of the remaining three at trial; as none of these counts ended in a conviction, plaintiff experienced a favorable termination on all charges.  For the four charges stemming from plaintiff's initial encounter with defendant Vargas—driving while intoxicated, unlawful possession of marijuana, resisting arrest, and leaving the scene of property damage—whether there was probable cause to prosecute plaintiff depends, as with the false arrest and excessive force claims, on whether a jury

12

credits plaintiff's or defendant Vargas's testimony.[6]  Since a jury could then infer actual malice from the absence of probable cause, plaintiff has clearly presented sufficient evidence to support a malicious prosecution claim as to these four charges against defendant Vargas.

As discussed above, defendants had probable cause to arrest plaintiff following his attempted flight, but that does not automatically confer probable cause to prosecute plaintiff for escape and obstruction of governmental administration.  New York courts have consistently held that a defendant may be prosecuted for escape only if he is in "lawful custody"; if the initial arrest is unauthorized—whether due to procedural defect, constitutional violation, or any other reason—then the defendant cannot be prosecuted for escaping from custody.  *People v. Tedesche*, 3 A.D.2d 220, 221 (N.Y. App. Div. 1st Dep't 1957); *see also Allah*, 111 Misc. 2d at 519 ("where there is no probable cause [for an initial] arrest there can be no prosecution for escape").  Similarly, a charge of obstruction of governmental administration cannot be sustained "unless it is established that the police were engaged in authorized conduct." *People v. Lupinacci*, 191 A.D.2d 589, 590 (N.Y. App. Div. 2d Dep't 1993); *People v. Chavez*, 41 Misc. 3d 526, 534 (N.Y. Crim. Ct. 2013) ("Where, as here, the People allege that defendant attempted to

---

[6] Although plaintiff admits to leaving the scene of property damage, this does not automatically create probable cause to prosecute him under N.Y. Veh. & Traf. Law § 600.1. As alleged by plaintiff, the car he rear-ended immediately drove off, meaning that his obligation was not to stay on the scene but to "report the [accident] as soon as physically able to the nearest police station." *Id.*  However, New York courts have held that a driver cannot be prosecuted under this statute if a delay in reporting is caused by the driver's physical injuries or vehicle damage. *See People v. Leigh*, 19 Misc. 2d 675, 676 (N.Y. Police Ct. 1959) (dismissing charges against defendant who suffered minor injuries and a flat tire from the pertinent accident given that "[t]he entire incident, from the time of the crash to the apprehension, [was] approximately five minutes"); *see also People v. Skelly*, 52 Misc. 2d 606, 606 (N.Y. App. Term. 1966) (vacating conviction under similar facts).  Under plaintiff's account, this case is like *Leigh*, as there was a gap of only a few minutes between the initial accident and when plaintiff was forced to pull onto the median. Therefore, a jury could reasonably find that defendant Vargas lacked probable cause to prosecute plaintiff for violating § 600.1.

13

interfere with an arrest, the lawfulness of the arrest must be demonstrated."). Accordingly, whether defendants had probable cause to believe a prosecution against plaintiff could succeed on these two charges depends on whether a jury finds that plaintiff's initial arrest was lawful. If it determines that the arrest was lawful, then plaintiff was validly in custody and could be properly prosecuted for escape and obstruction; if it determines that the arrest was not lawful, then it could also find that plaintiff was maliciously prosecuted on the escape and obstruction charges.[7]

*Fabrication of Evidence*

"To succeed on a fabricated evidence claim, a plaintiff must establish that an (1) investigating official (2) fabricated information (3) that is likely to influence a jury's verdict, (4) forwarded that information to prosecutors, and (5) the plaintiff suffered a deprivation of life, liberty, or property as a result." *Ashley v. City of New York*, 992 F.3d 128, 139 (2d Cir. 2021) (internal quotations omitted). The Second Circuit has held that this rule applies even "when the information fabricated is the officer's own account of his or her observations of alleged criminal activity," *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 274 (2d Cir. 2016), and that "a plaintiff's prosecution can be a deprivation of liberty" sufficient to establish a claim. *Barnes v. City of New York*, 68 F.4th 123, 129 (2d Cir. 2023).

---

[7] Defendants are also not entitled to qualified immunity on this claim based on the undisputed facts. Although defendants had to make a split-second decision to apprehend plaintiff, there was no comparable time pressure guiding the decision to prosecute him. *See Lowth*, 82 F.3d at 572 (noting that qualified immunity for a malicious prosecution claim should be evaluated "[w]ith some distance from the immediate confusion of the events [of the arrest], and with the additional knowledge that [the officer] had acquired"). Determining whether qualified immunity ultimately applies—particularly to defendants Smith and Arias—will likely require special interrogatories. For example, if a jury finds that Smith and Arias thought that Vargas had properly arrested plaintiff, then those officers could have reasonably believed that plaintiff was in lawful custody and could be prosecuted for escape. Counsel should be prepared to address the number, scope, and wording of the required special interrogatories when this case goes to trial.

Here, plaintiff has clearly presented a viable fabrication of evidence claim against defendant Vargas. It is uncontested that defendant Vargas is an investigating official who forwarded information—namely, his account of plaintiff's arrest—to prosecutors. Plaintiff was then prosecuted on six charges, suffering a deprivation of liberty, and defendant Vargas's testimony, as the primary evidence underpinning the prosecution, was certainly likely to influence a jury's verdict. The only remaining element is that defendant Vargas's account was fabricated: a vigorously contested issue that must be resolved by a jury for the reasons explained above. Summary judgment on this claim is therefore denied as to Vargas. As plaintiff has not identified any allegedly false evidence generated by the other defendants, summary judgment is granted as to Arias and Smith.

*Abuse of Process*

"[I]n New York, a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act, (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). "In order to state a claim for abuse of process, a plaintiff must establish that the defendants had an improper *purpose* in instigating the action" and not simply a malicious motive, such as "to retaliate against him by pursuing his arrest and prosecution." *Id.* at 77 (internal quotations omitted).

Here, plaintiff has failed to identify any improper purpose that is supported by the evidence of record. The only improper purpose plaintiff has ever alleged is that defendants intended to use plaintiff's prosecution to discredit him, thereby concealing and avoiding accountability for their torts against plaintiff. *See* DE 34 ¶¶ 117-19. At least one district court in

15

this circuit has recognized "covering up [an] illegal arrest" as a plausible improper purpose at the motion-to-dismiss stage. *See Ying Li v. City of New York*, 246 F. Supp. 3d 578, 617 (E.D.N.Y. 2017). But even if this qualifies as an improper purpose, plaintiff has not produced any evidence from which a jury could rationally infer that defendants' objective was in fact to effectuate a cover-up. Plaintiff's theory instead relies on "mere speculation or conjecture as to the true nature of the facts, [which is insufficient] to overcome a motion for summary judgment." *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995) (internal quotations omitted); *Sosa v. New York City Dep't of Educ.*, 406 F. Supp. 3d 266, 268–69 (E.D.N.Y. 2019) ("the non-movant cannot survive summary judgment merely by relying on the same conclusory allegations set forth in her complaint"). As plaintiff has failed to provide evidentiary support for this claim despite several opportunities to do so, summary judgment is granted as to the abuse of process claim.

### *Conclusion*

For the foregoing reasons, the Court grants defendants' summary judgment motion as to the false arrest claim as it pertains to the second arrest and the abuse of process claim in its entirety. Furthermore, summary judgment is granted as to defendants Smith and Arias on the fabrication of evidence claim and on all claims to the extent they relate to plaintiff's initial arrest. Summary judgment is denied as to the following claims, which will proceed to trial: false arrest, against Vargas as to the initial arrest; excessive force, against Vargas as to the initial arrest and all defendants as to the re-arrest; fabrication of evidence, against Vargas; malicious prosecution, against all defendants; and failure to intervene, against all defendants.

**SO ORDERED.**

Dated: Central Islip, New York
       February 11, 2025

                                                **/s/ Gary R. Brown**
                                                Gary R. Brown
                                                United States District Judge