**FILED
CLERK**

7/31/2026 12:42 pm

**U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE**

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

MIGUEL JIMENEZ,

                    Plaintiff,

      - against –

TROOPER JOSE VARGAS, SERGEANT
RANDY SMITH and TROOPER EDWARDO
ARIAS,

                    Defendants.
-------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**

16-CV-5846 (GRB)(AYS)

**GARY R. BROWN, United States District Judge**:

In an order dated February 11, 2025, this Court granted, in part, a summary judgment motion in this §1983 action, resolving a number of claims but leaving several claims for trial. That decision is incorporated by reference herein, and familiarity with it is assumed. *Jimenez v. Vargas*, No. CV 16-5846 (GRB)(LGD), 2025 WL 458244, at *1 (E.D.N.Y. Feb. 11, 2025). Following that determination, the Court set the matter for trial for March 23, 2026, which was to proceed on several counts, to wit:

(1) false arrest against Vargas as to the initial arrest;

(2) excessive force

      a. against Vargas as to the initial arrest and

      b. all defendants as to the re-arrest;

(3) fabrication of evidence against Vargas;

(4) malicious prosecution against all defendants [arising from the second arrest]; and

(5) failure to intervene against all defendants.

1

Docket Entry ("DE") 116 at 16.

Part of the Court's analysis considered the following dispute of fact: whether or not, in connection with the plaintiff's initial DWI arrest, a marijuana pipe was recovered from plaintiff's vehicle. *Compare id.* at 2 ("Vargas asserts that he then examined plaintiff's car, where he noticed an 'odor of marijuana' and discovered a 'marijuana pipe'"); *with* 7 ("plaintiff asserts that he was not intoxicated, that he was not administered any sobriety test, [and] that no 'marijuana pipe' was found in his car."). The decision also includes an analysis of part of plaintiff's deposition testimony which, the Court believed, defendants had unfairly misconstrued in an effort to undermine plaintiff's disputation of this fact. *Id.* at 7 n.4. Based on the matters presented, the Court determined:

> there is no conclusive evidence to establish either version of events, and if plaintiff's version is believed, defendant Vargas would not be entitled to qualified immunity, as no reasonable officer would believe he had probable cause under those facts. Therefore, it must fall to a jury to determine if defendant Vargas had probable cause to arrest plaintiff during their initial encounter.

*Id.* at 8.

As the case drew closer to trial, initially set for March 23, 2026, a significant evidentiary development surfaced. While preparing trial exhibits, counsel identified a Notice of Claim executed by plaintiff and notarized in 2014, in which he admitted that during a search of his automobile, "Trooper Vargas . . . recover[ed] from the passenger's side a plastic bowl with marijuana residue." DE 150-4 at 3. This contradicts the sworn statements previously made by plaintiff in this action, upon which this Court based its summary judgment determinations. The narrative in the notice of claim further stated that, after his initial arrest, plaintiff "proceeded to slip off the handcuff that was attached to his right hand [and] then ran through the back door" of

2

the Trooper barracks, leading to his arrest and subsequent prosecution for escape and obstruction of governmental administration. *Id.* at 3-4.

Following the revelations contained in the notice of claim, plaintiff filed a letter in which he withdrew his false arrest claim against Vargas in connection with the initial arrest. DE 144. However, plaintiff's counsel indicated that plaintiff was not withdrawing the malicious prosecution count against all three defendants concerning the escape and obstruction of governmental administration charges. *Id.*

In addition to this factual development, there were legal developments: the Second Circuit has recently reiterated and reemphasized certain principles related to qualified immunity. As a result, the Court permitted defendants to renew their motion for summary judgment based on qualified immunity as to the malicious prosecution claims. This opinion follows.

*Discussion*

As this Court recently observed, the Second Circuit has, in several opinions, examined the invocation of qualified immunity in the summary judgment context:

> In *Sacaza v. City of New York*, a police officer arrested plaintiff for allegedly sexually assaulting a minor on a Metropolitan Transit Authority bus based on the minor's statements as well as her identification of him in a photo array and at an in-person lineup. 169 F.4th 363, 366-68 (2d Cir. 2026). The Second Circuit acknowledged that some facts – including a video from the bus that did not definitively show any contact between the plaintiff and the minor – could have cast doubt on the probable cause showing. Nevertheless, the Court of Appeals held that, because "a reasonable jury could find [the officer] had probable cause to arrest and charge [the plaintiff] or the lack thereof, the appropriate remedy is not to leave that determination to the jury, but to grant summary judgment on qualified immunity to the officer." *Id.* at 372 (emphasis added). The Circuit reasoned that "[i]f a reasonable jury could find probable cause, then so could a reasonable officer. And

if a reasonable officer could find probable cause, then [defendant] is entitled to qualified immunity." *Id.* at 371.

In *Jin v. City of New York*, police officers responded to a 911 call made by a man who alleged that the plaintiff struck the man's father. 169 F.4th at 378. When the officers arrived on scene, the 911 caller described the incident to them, even though he was not an eyewitness, and the victim – who did not speak English – "point[ed] to the injuries on his arm and then, picking up an umbrella, simulated how the plaintiff had struck him." *Id.* The plaintiff reappeared while the officers were still present and informed the officers that neighbors in the apartment next door could corroborate her version of the story that the victim beat her and threw her out of the apartment. *Id.* The officers did not investigate further and arrested the plaintiff. *Id.* The plaintiff argued that the officers could not have had probable cause without an eyewitness account or a statement from the victim, but the Second Circuit held that "even under [the plaintiff's] version of the disputed facts, reasonable officers could disagree as to whether there was probable cause to arrest based upon the reasonably trustworthy information relayed to the Officers," and thus, the officers were entitled to qualified immunity. *Id.* at 382, 386.

*Leith v. Cnty. of Nassau*, 2026 WL 1243399, at *3–4 (E.D.N.Y. May 6, 2026); *cf. Jeanty v. Viruet*, 2026 WL 891213 (2d Cir. Apr. 1, 2026) (awarding summary judgment on the basis of qualified immunity where the court could not "conclude that 'no reasonable police officer, out of the wide range of reasonable people who enforce the laws in this country, could have determined that probable cause existed.'").

This Court previously determined that defendants were entitled to qualified immunity based upon arguable probable cause for defendant's false arrest counts regarding his arrest for escape. DE 116 at 8. However, the question of qualified immunity – and the effect of arguable probable cause – for defendant's malicious prosecution claims regarding the escape and obstruction charges was not clearly presented. *Id.* at 11-14. Thus, the Court held that "whether

4

defendants had probable cause to believe a prosecution against plaintiff could succeed on these two charges depends on whether a jury finds that plaintiff's initial arrest was lawful." DE 116 at 14. In opposing the instant motion, plaintiff relies exclusively upon this notion, raising a single disputed factual issue: "'if [a jury] determines that the arrest was not lawful, then it could also find that plaintiff was maliciously prosecuted on the escape and obstruction charges.'" DE 152 at 11 (quoting DE 116 at 14).

Invocation of the arguable probable cause standard (which was not asserted in the briefing on malicious prosecution for the initial summary judgment motion) may be dispositive here. Plaintiff points to no factual material suggesting that Arias and Smith were aware of the details of the initial arrest; instead, he spotlights an absence of evidence in this regard. *See* DE 152 at 12 ("there are no facts in the record which show that Defendants Arias and Smith had any basis to believe that Mr. Jimenez was lawfully in custody"). It seems clear then that Smith and Arias had at least arguable probable cause to believe that the initial arrest was warranted. They would therefore be shielded by qualified immunity as to the prosecution for escape and obstruction and are entitled to summary judgment.

As to Vargas, the question is a bit more tangled, but on the now undisputed facts, it still appears that Vargas had arguable probable cause for the initial arrest (even if not actual probable cause) such that, in evaluating the ability to prosecute plaintiff for escape and obstruction, a reasonable officer could conclude that the arrest issues would not present a bar to the proceeding. Thus, as to Vargas, on this issue alone, it would seem that he is entitled to summary judgment.

However, with respect to all defendants, there is a second, clearer basis for qualified immunity. As the Supreme Court has held:

Government officials enjoy qualified immunity from suit under § 1983 unless their

conduct violates clearly established law. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, 142 S.Ct. 4, 211 L.Ed.2d 164 (2021) (per curiam). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Ibid.* A right is not clearly established if existing precedent does not place the constitutional question "'beyond debate.'" *Ibid.*

To find that a right is clearly established, courts generally "need to identify a case where an officer acting under similar circumstances ... was held to have violated" the Constitution. *Escondido v. Emmons*, 586 U.S. 38, 43, 139 S.Ct. 500, 202 L.Ed.2d 455 (2019) (per curiam) (internal quotation marks omitted). The relevant precedent must define the right with a "high degree of specificity," so that "every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *District of Columbia v. Wesby*, 583 U.S. 48, 63, 138 S.Ct. 577, 199 L.Ed.2d 453 (2018) (internal quotation marks omitted). Principles stated generally, such as that "an officer may not use unreasonable and excessive force," do not suffice. *Kisela v. Hughes*, 584 U.S. 100, 105, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018) (per curiam). In short, officers receive qualified immunity unless they could have "read" the relevant precedent beforehand and "know[ n]" that it proscribed their specific conduct. *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 616, 135 S.Ct. 1765, 191 L.Ed.2d 856 (2015).

*Zorn v. Linton*, 146 S. Ct. 926, 930 (2026). In a similar opinion, the Court further clarified that:

 [W]e have stressed the need to identify a case where an officer acting under similar circumstances was held to have violated the Fourth Amendment.... While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular [action] beyond debate.... Of course, there can be the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances.... But a body of relevant case law is usually necessary to clearly establish the answer...." *Wesby,*

6

583 U.S., at ——, 138 S.Ct., at 581 (internal quotation marks omitted).

*City of Escondido, Cal. v. Emmons*, 586 U.S. 38, 43–44 (2019).

Here, we must ask the question of whether plaintiff had a clearly established right to not be subject to prosecution for allegedly attempting to escape from police custody based on the premise that he may have been illegally apprehended in connection with a different violation. "A right is clearly established if the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *McKinney v. City of Middletown*, 49 F.4th 730, 738 (2d Cir. 2022) (alterations omitted). In considering this question at a summary judgment posture, where the question of qualified immunity as to malicious prosecution was not squarely presented, the Court denied summary judgment concerning the malicious prosecution claims based on non-precedential state court decisions suggesting that an absence of probable cause for the initial arrest could bar a related escape and obstruction charge. DE 116 at 13 (citing *People v. Tedesche*, 3 A.D.2d 220, 221 (N.Y. App. Div. 1st Dep't 1957); *People v. Allah*, 111 Misc. 2d 516, 519–20 (N.Y. Sup. Ct. 1981); *People v. Lupinacci*, 191 A.D.2d 589, 590 (N.Y. App. Div. 2d Dep't 1993); and *People v. Chavez*, 41 Misc. 3d 526, 534 (N.Y. Crim. Ct. 2013)). All of these decisions are in the context of criminal prosecutions, focusing on whether procedural issues surrounding custody can serve as a defense to an escape charge under New York law. And there are certain authorities – notably in other contexts – that suggest that an illegal arrest may not bar subsequent conviction. *Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("Nor do we retreat from the established rule that illegal arrest or detention does not void a subsequent conviction.").

While this Court endeavored to find (and believes it found) the correct legal answer in the context presented, it cannot be said with conviction that the determination made was grounded

7

upon "controlling authority" or "a robust 'consensus of cases of persuasive authority.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011). Such a finding generally requires clear determinations by the Supreme Court or the Court of Appeals; to defeat a claim to qualified immunity, a court must "identify a case where an officer taking similar actions in similar circumstances was held to have violated the Constitution." *Zorn*, 146 S. Ct. at 931. On this motion, plaintiff offers no such authority other than a citation to this Court's earlier ruling.

Thus, it cannot be said that, by participating in his prosecution for escape following what may have been an improper arrest, defendants' conduct violated a clearly established right held by the plaintiff, particularly where, as here, it is undisputed that plaintiff endeavored to escape from police custody by slipping out of his restraints and fleeing a police barracks. DE 116 at 8 ("it cannot be reasonably disputed that defendants had probable cause to re-arrest plaintiff for escape and obstruction of governmental administration, as plaintiff himself admits that fled the barracks while defendants were out of the room.").[1]

---

[1] Plaintiff's concession regarding the marijuana pipe troublingly contradicts his sworn deposition testimony and is suggestive evidence tending to show that plaintiff did in fact drive while intoxicated, also rendering more persuasive Vargas's testimony that he smelled marijuana before effecting the initial arrest. At the summary judgment stage, that problem would not, standing alone, render undisputed the disputed facts concerning whether Vargas reasonably ascertained that plaintiff was intoxicated at the time of arrest. However, the obviousness of the contradiction here could have broader ramifications—if a deponent's testimony contradicts the record such that the discrepancies are "inescapable and unequivocal," the Court may find that the testimony raises only a "sham issue of fact." *Bentley v. AutoZoners, LLC*, 935 F.3d 76, 86 (2d Cir. 2019). In those circumstances, the deponent's testimony can be disregarded, and summary judgment may be granted against him, even if the testimony purports to raise triable factual disputes. *See id.* ("in the rare circumstance where the plaintiff relies almost exclusively on [his] own testimony, much of which is contradictory and incomplete, to establish a triable issue of fact, it may well be impossible for the court to determine whether the jury could reasonably find for the plaintiff, and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiff's account." (cleaned up) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)). That principle could furnish an alternate basis for granting summary judgment on this record, though the Court's findings regarding plaintiff's lack of a clearly established right are independently sufficient.

**CONCLUSION**

For these reasons, defendants' motion for partial summary judgment is granted with respect to plaintiff's claims for malicious prosecution.

**SO ORDERED.**

Dated: Central Islip, New York
       July 31, 2026

                                        /s/ Gary R. Brown
                                        GARY R. BROWN
                                        United States District Judge